UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

UNITED STATES OF AMERICA,

    - against -

GARY HARVEY,

               Defendant.

------------------------------------------X

05 Cr. 1193-01(RWS)

SENTENCING OPINION

USDC SDNY
DOCUMENT
DATE FILED: 6/8/07

Sweet, D.J.,

        On October 30, 2006, defendant Gary Harvey ("Harvey" or "Defendant") pled guilty to one count of conspiring, in violation of 21 U.S.C. § 846, to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B), a Class B Felony. For the reasons set forth below, Harvey will be sentenced to a term of imprisonment of 78 months, to be followed by a four-year term of supervised release. Harvey will also be required to pay a mandatory special assessment of $100.

### Prior Proceedings

        Harvey voluntarily surrendered on October 11, 2005, and was released on bail the same day. An indictment was filed in the Southern District of New York on November 10, 2005, charging that from January 2002, up to and including August 2003, Harvey and others conspired, in violation of 21 U.S.C. § 846, to distribute

and possess with intent to distribute 100 grams and more of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B).

On October 30, 2006, Harvey appeared before the Honorable Douglas F. Eaton of this district and allocuted to the criminal conduct as charged in the indictment. Harvey's guilty plea is accepted by this Court, and he is scheduled to be sentenced on June 12, 2007.

## The Sentencing Framework

In accordance with the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005) and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed --

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

2

  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for --

  (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5) any pertinent policy statement ... [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 111.

## The Defendant

The following description draws on the Presentence Investigation Report prepared by the Probation Office of the United State District Court for the Southern District of New York, dated May 7, 2007, and revised on June 1, 2007 (the "PSI").

3

Gary T. Harvey was born in Cincinnati, Ohio in 1951. The defendant's mother reportedly resides in Cincinnati and receives SSI disability benefits, due to having rheumatoid arthritis and emphysema, and having had a stroke. Harvey reportedly cares for his wheelchair-bound mother. Harvey has said that he has never met his father, who is now deceased.

Harvey related that he lived with his mother and his grandmother until he was nine or ten years of age. At that time, his mother married, and the couple moved into their own residence, after which Harvey has reported that he was mainly raised by his grandmother. Harvey said he grew up in poverty, and that it was a "day-to-day struggle."

Harvey has two sons, ages 39 and 32. Although Harvey has stated that he is in contact with both of his sons, he does not keep in any regular contact with either of their mothers.

Harvey is married to a third woman, who suffers from congestive heart failure. His wife has related that Harvey's mother had a "nervous breakdown" when he was young, and that he was placed in foster care, where he was abused. Mrs. Harvey also noted that her husband was in and out of jail during most of his life. She noted that Harvey worked two jobs while she obtained her teaching certification. She reported that they are trying to start

4

teaching certification. She reported that they are trying to start a program in Cincinnati that will provide barbering instruction, GED classes, and HIV/AIDS education.

Harvey attended high school from 1965 to 1969, and graduated in December 1971. The defendant has reported that he studied liberal arts at the University of Cincinnati from about 1974 to 1975; however, the university found no records on the defendant. From about 1978 to 1980, Harvey reportedly studied business management at Columbus Tech in Columbus, Ohio; verification could not be requested, however, as no such listing was found.

Records received from Ohio University in Athens, Ohio showed that the defendant was enrolled there "less than half-time" for three terms from 1979 to 1981, and for one term from 1982 to 1983. He was also enrolled full-time for two terms from 1986 to 1987. Harvey has related that he attended this university while incarcerated. In addition, information received from Wilmington College in Wilmington, Ohio showed that Harvey attended there from January 14, 1991 to December 11, 1991, completing 36 semester hours.

The defendant has reported that in total, he has completed about three years of college. He has also taken courses in residential wiring and office machine repair.

5

Since 2003, the defendant has reportedly been employed with a company in Cincinnati, Ohio, where he reportedly works in the shipping and receiving department. For about the previous two years, Harvey reportedly owned a clothing store in Cincinnati. From about 2000 to 2002, the defendant reportedly worked as the manager of the beverage department at a water park in Cincinnati. Harvey was incarcerated from 1988 to 2000. Prior to his incarceration, Harvey worked for his half-brother's moving company for several years.

Harvey has a long history of drug use. He has stated that in the 1960s, he used a hallucinogenic drug called "window pane." He also started using marijuana, which he continued to use until the early- to mid-1980s.

The defendant has said that he began using cocaine in the 1970s, and he continued to do so until about six or seven months prior to his presentence interview on December 15, 2006. He said he used the drug daily prior to entering treatment.

Harvey has related that he first used heroin in the 1980s, using it intermittently with other drugs. He started using "crack" cocaine in 2006, when his instant prosecution came about. He has also sporadically used barbiturates, Valium, diet pills, and other opiates.

6

Harvey has related that he received inpatient drug treatment for four or five months in the 1970s; all other treatment has been outpatient, either voluntary or court-ordered. He said he attends Alcoholics Anonymous/Narcotics Anonymous meetings several times per week.

While on pretrial supervision, Harvey has submitted two urine specimens that have been positive for cocaine and morphine.

**The Offense Conduct**

The following description draws on the PSI. The specific facts of the underlying conduct are adopted as set forth in that report.

Beginning in January 2003, the Drug Enforcement Administration (DEA) in New York conducted an investigation into a group of international narcotics traffickers who engaged in the importation and distribution of, among other narcotics, heroin and cocaine. The investigation included the use of court-authorized wiretaps on telephones used by members of the targeted conspiracy.

A cooperating witness ("the CW") told DEA agents that Harvey was a member of an organization involved in the distribution of heroin in the Southern District of New York and Cincinnati, Ohio, among other places. The CW stated that he supplied Harvey

7

with heroin on numerous occasions, in quantities between 10 and approximately 100 grams.

DEA agents reviewed business records maintained by Western Union, and learned that on September 16, 2002, Harvey sent a money order in the amount of $3,500 from Cincinnati to the CW in New York City. The CW confirmed that the money order was payment for heroin that the CW had supplied.

On June 11, 2003, Harvey, who was in Cincinnati, called the CW in New York and discussed money that Harvey owed the CW for heroin. DEA agents reviewed telephone records for the cellular telephone utilized by the CW between January 2003 and July 2003. The records revealed approximately 266 telephone calls between Harvey and the CW during that period of time.

## The Relevant Statutory Provisions

The mandatory minimum term of imprisonment is five years and the maximum term of imprisonment is forty years, pursuant to 21 U.S.C. §§ 841(b)(1)(B) and 846. In addition, a term of at least four years' supervised release is required if a sentence of imprisonment is imposed, pursuant to 21 U.S.C. §§ 841(b)(1)(B) and 846.

Harvey is not eligible for probation because the instant offense is a Class B felony and one for which probation has been expressly precluded by statute, pursuant to 18 U.S.C. § 3561(a)(1)-(2).

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The maximum fine is $2,000,000, pursuant to 21 U.S.C. §§ 841(b)(1)(B) and 846. A special assessment in the amount of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

Pursuant to 21 U.S.C. § 862(a)(1)(A), upon a first conviction for distribution of a controlled substance, a defendant may be declared ineligible for any or all Federal benefits for up to five years, as determined by the Court.

**The Guidelines**

The November 1, 2006, edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to U.S.S.G. § 1B1.11(a).

The Guideline for violations of 21 U.S.C. § 846 is found in U.S.S.G. § 2D1.1. Based on the <u>Pimentel</u> letter issued by the Government, Harvey is responsible for conspiring to distribute and possess with the intent to distribute at least 100 grams but less than 400 grams of heroin. As specified in the Drug Quantity Table under U.S.S.G. § 2D1.1(c)(7), this amount of heroin results in a base offense level of 26.

Based on his plea allocution, Harvey has shown recognition of responsibility for the offense. Pursuant to U.S.S.G. § 3E1.1(a), the offense is therefore reduced two levels. Further, because Harvey's timely notification of his intention to plead guilty has allowed the Government to allocate its resources more efficiently, and because the offense level is 16 or greater, the offense level is reduced one additional level, pursuant to U.S.S.G. § 3E1.1(b).

The defendant's resulting adjusted offense level is 23.

10

Harvey has several known criminal convictions, for which he receives a total of seven criminal history points. Thus, he has a Criminal History Category of IV.

Based on a total offense level of 23 and a Criminal History Category of IV, the Guidelines range for imprisonment is 70 to 87 months.

Pursuant to U.S.S.G. § 5D1.1(a), a term of supervised release is required to follow when a term of imprisonment of more than one year is imposed, or when required by statute. The Guidelines range for a term of supervised release would be at least four years, the minimum required by statute, but no more than five years, pursuant to U.S.S.G. § 5D1.2(a)(1) and (c).

A term of probation is not authorized, pursuant to U.S.S.G. §§ 5B1.1(b)(1)-(2), in that the offense is a Class B felony and one that expressly precludes probation as a sentence.

The Guidelines fine range for the instant offense is from $10,00 to $2,000,000, pursuant to U.S.S.G. § 5E1.2(c)(3)-(4). Subject to the defendant's ability to pay, in imposing a fine pursuant to U.S.S.G. § 5E1.2(d)(7), the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release. The most recent advisory from the Administrative Office of the United States Courts suggests a

monthly cost of $2,036.92 to be used for imprisonment, a monthly cost of $294.60 for supervision, and a monthly cost of $1,799.04 for community confinement.

Pursuant to U.S.S.G. § 5F1.6, the Court may deny eligibility for certain federal benefits of any individual convicted of distribution or possession of a controlled substance.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guideline analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary," as is required in accordance with the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In particular, § 3553(a)(1) asks that the sentence imposed consider both "the nature and circumstances of the offense and the history and characteristics of the defendant," while § 3553(a)(2)(A) demands that the penalty "provide just punishment for the offense" that simultaneously "afford[s] adequate deterrence to criminal conduct" as required by § 3553(a)(2)(B). Furthermore, pursuant to § 3553(a)(6), the Court is also mindful of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Considering the history and characteristics of the defendant pursuant to § 3553(a)(1), the Court takes note of the Defendant's difficult childhood, unfortunate struggle with drug abuse, and advanced age.

Having considered all the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

## The Sentence

For the instant offense, Harvey is hereby sentenced to 78 months' imprisonment, followed by a four-year term of supervised release.

Harvey is considered a suitable candidate for voluntary surrender pursuant to 18 U.S.C. § 3143(a)(2). He has kept all court appearances and, with the exception of incurring two positive drug tests, he has been in compliance with the terms and conditions of his pretrial release. He is not viewed as a flight risk or a danger to the community. Accordingly, Harvey is directed to report to the Bureau of Prisons no later than July 9, 2007, to commence his term of imprisonment.

Harvey is directed to report to the nearest Probation Office within seventy-two hours of release from custody. It is recommended that the defendant be supervised by the district of residence.

As mandatory conditions of his supervised release, Harvey shall: (1) not commit another federal, state or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer. The mandatory drug testing condition is suspended due to the imposition of a special condition requiring drug treatment and testing.

The standard conditions of supervision (1-13) shall be imposed, along with the following special conditions:

(1) Harvey will participate in a program approved by the United States Probation Office, which program may include testing to determine whether he has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer. Harvey shall be required to contribute to the costs of services rendered, in an amount determined by the probation officer, based on ability to pay or availability of third-party payment.

(2) Harvey shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in reasonable manner.

14

Failure to submit to a search may be grounds for revocation. Harvey shall inform any other residents that the premises may be subject to search pursuant to this condition.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the Defendant is able to pay a fine, and the fine in this case shall be waived. A special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing set for June 12, 2007.

It is so ordered.

New York, NY
June 7, 2007

ROBERT W. SWEET
U.S.D.J.

15